IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMON ALVARADO, JAVIER ALVARADO, RICARDO ALVARADO, JAIME BANUELOS, ARTURO BANUELOS, RUBEN BANUELOS, IGNACIO JAVIAN, JOSE LARIOS, PEDRO CASTRO, ABEL CASTRO, TAURINO GUZMAN, HENRY MARTINEZ, LUCIO POLANCO, SERGIO POLANCO, JUAN POLANCO, FERNANDO CASTRO, HORACIO CASTRO, ERICK RAMIREZ, JOSE VALDEZ, ANTONIO GUZMAN, FRANCISCO GUZMAN, CARLOS BANUELOS, FELIPE BERUMEN, and JOSE GARCIA, <br><br> Plaintiffs, <br><br> v. <br><br> CORPORATE CLEANING SERVICE, INC., and NEAL ZUCKER, individually, <br><br> Defendants. | Case No. 07 C 6361 <br><br> Judge Dow |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO COMPLETELY ANSWER PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiffs move this court for an Order compelling Defendants Corporate Cleaning Service, Inc. and Neal Zucker to produce documents responsive to certain requests contained in Plaintiffs' First Request for Production of Documents to Defendants. In support of this Motion, Plaintiffs state as follows:

**I.   INTRODUCTION**

This lawsuit asserts that Defendants failed to compensate Plaintiffs overtime wages for the time they worked in excess of forty (40) hours per week in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"). Defendants claim that Plaintiffs are exempt from the overtime provisions of the FLSA and IMWL

1

because they are commissioned salespersons. See Defendants' Eleventh Affirmative Defense in Defendants' Answer to Plaintiffs' First Amended Complaint, Dckt # 18. In order to prevail on that affirmative defense (herein "Section 7(i) affirmative defense"), Defendants bear the burden of proving that each of the following three elements are satisfied: (1) Defendants' business qualifies as a "retail or service establishment;" (2) Plaintiffs' regular rate of pay exceeded $7.73, or one and one-half times the federal minimum wage, in each work week Defendants assert the exemption; and (3) more than half of Plaintiffs' earnings (for a representative period of not less than one month) were derived from *commissions* on goods or services. 29 U.S.C. 207(i); 820 ILCS 105/4a(2)F.[1]

The Court granted Defendants' motion to bifurcate discovery on July 21, 2008, and accordingly, the parties are currently focusing their efforts on obtaining discovery bearing on the Section 7(i) affirmative defense. To that end, Plaintiffs have requested certain documents and information that are critical to the merit of Defendants' Section 7(i) affirmative defense. Defendants, however, have refused to produce such documents.

## II. DISCOVERY STATUS AND THE PARTIES' EFFORTS TO RESOLVE THIS DISCOVERY DISPUTE

On July 8, 2008, Plaintiffs' Counsel sent Defendants' Counsel a letter identifying the deficiencies in Defendants' responses to Plaintiffs' discovery requests. See Plaintiffs' Counsel's July 8, 2008 correspondence, attached hereto as Exhibit A. The parties held several telephonic discovery conferences relating to the deficiencies in Defendants' discovery responses, and on August 15, 2008, Defendants tendered their First Supplemental Answers to Plaintiffs' First Set of Interrogatories and First Supplemental Responses to Plaintiffs' First Request for Production of Documents, which cured some but not all of the deficiencies in Defendants' original discovery responses.

---

[1] The "commissioned salesperson" exemption found in 820 ILCS 104/4a(2)F specifically exempts "[a]ny commissioned employee as described in paragraph (i) of Section 7 of the Federal Fair Labor Standards Act of 1938 and rules and regulations promulgated thereunder" from the overtime provisions of the IMWL.

2

On August 18, 2008, Plaintiffs sent a correspondence to Defendants' Counsel identifying the remaining outstanding deficiencies in Defendants' discovery responses. See Plaintiffs' Counsel's August 18, 2008 correspondence, attached hereto as Exhibit B. Thereafter, on August 20, 2008, Christina Nelson, Counsel for Defendants, telephoned Maureen Bantz, Counsel for Plaintiffs, and informed her that Defendants did not intend to cure the remaining deficiencies in their discovery answers. Accordingly, the parties are now at impasse with respect to the issues outlined in Plaintiffs' Counsel's August 18, 2008 correspondence.

The parties have made good faith attempts to resolve the remaining issues in dispute, but have been unable to reach an accord with respect to Defendants' answers to Document Request No. 2, Document Request No. 6, Document Request No. 32 and Document Request No. 33. The parties have fulfilled the requirements of Local Rule 37.2.

### III. DISCOVERY STANDARD

Pursuant to Fed. R. Civ. P. 26, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense... relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

### IV. ARGUMENT

#### A. A Brief Summary of the Discovery Needed to Determine Whether the Section 7(i) Exemption Applies to Defendants' Employees

Under the first element of the commissioned sales person exemption, Defendants must prove that they qualify as a "retail or service establishment." To qualify as a "retail or service establishment," Defendants must prove that they satisfy each of the following three elements: (1) Defendants engage in the making of sales of goods or services; (2) 75 percent of their sales of goods

3

or services, or of both, must be recognized as retail in the particular industry; and (3) not over 25 percent of their sales of goods or services, or of both, may be sales for resale." 29 C.F.R. §779.313. In order to determine whether Defendants' business qualifies as a "retail or service establishment," Plaintiffs require information relating to the identity of Defendants' customers and the nature of the services they provide to their customers. The production of such information is necessary for at least two reasons. First, it goes toward establishing whether Defendants' sales are for resale. Second, the information also goes towards establishing whether Defendants' customers are individual consumers or commercial business. The types of customers Defendants service are relevant to determining whether Defendants' sales qualify as "retail" because services that are "performed regularly and repeatedly for a commercial or industrial firm under contract over an extended period of time, such as a year," may not be considered retail sales. See Wage and Hour Opinion Letter, November 27, 1973, 1973 WL 36849; *see also, Schultz v. Instant Handling, Inc.*, 418 F.2d 1019, 1024 (5th Cir. 1969) (finding that a trash removal company's services were not retail because they were rendered to businesses on a scale that the general public would not require); *Goldberg v. Saf-T-Clean, Inc.*, 209 F. Supp. 343, 345 (D. Fla. 1962) (finding that janitorial services provided predominantly to business and commercial establishments are not retail, even though the service was available to the general public).

Under the second element of the commissioned sales person exemption, Defendants must show that Plaintiffs' regular rate of pay exceeded $7.73, or one and one-half times the federal minimum wage, in each work week Defendants assert the exemption. Accordingly, with respect to this element, Plaintiffs require that Defendants provide them with documents and information setting forth the hours Plaintiffs worked and the amounts they were paid so that Plaintiffs can compute whether their regular rate of pay exceeded $7.73 in each work week they worked for Defendants.

4

Finally, Defendants must prove that Plaintiffs were paid on a commission basis in order to avail themselves to the Section 7(i) exemption. A commission compensation plan pays an individual a percentage of the price charged to the customer. *Wilks v. The Pep Boys,* No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537, at *33-34 (M.D. Tenn. September 26, 2006). Plaintiffs are entitled, therefore, to information explaining how Defendants charged their customers and how Plaintiffs were paid so that Plaintiffs can evaluate the relationship between the two.

### B. Plaintiffs Request that Defendants Supplement their Document Production to Produce Electronic Data in its Native Format

Defendants produced a .rtf electronic file on a CD containing 16,661 lines of data. That file purports to hold a copy of certain information Defendants maintain in an ACCESS database they use. The file contains information that is critical in evaluating whether Defendants' employees are exempt under Section 7(i), because it includes the identity of Defendants' customers and the wages Plaintiffs were paid for each job they completed. The inherent problem with the data lies in the fact that Defendants did not produce the data in its native format, as an ACCESS file, but instead produced it in an unusable .rtf format. It its current form, Plaintiffs cannot analyze the data without re-entering it by hand, into an Excel or Access format. In its current form, Plaintiffs cannot sort the data, cannot insert data fields, and cannot perform mathematical computations within the data. Plaintiffs also cannot electronically copy the data and transfer it to a usable format. In sum, the production of the .rtf file is tantamount to producing 428 pages of documents in paper format.

Rather than manually re-produce thousands of lines of data into a useable format, which could take a countless number of hours to complete and could potentially lead to numerous errors, Plaintiffs requested that Defendants re-produce the data in the form that Defendants maintain it in – as an ACCESS file. Despite the fact that Plaintiffs are entitled to documents and information in the

form in which they are maintained, Defendants converted their data into an unusable format. Accordingly, Plaintiffs request that the Court enter an order compelling Defendants to re-produce the data in its *native* format so that Plaintiffs can efficiently analyze the electronic data produced by Defendants.

### C. Plaintiffs Request that Defendants Produce Information and Documents Relating to Whether Plaintiffs Were Paid On a Commission Basis

In order to be exempt under Section 7(i) of the FLSA, Defendants' employees must be paid on a commission basis, and *not* on any other basis such as an hourly basis or a piece-rate basis. See *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729 (1947) (employees paid on a piece-rate basis are not exempt from the overtime provisions of the FLSA). Although Defendants claim Plaintiffs were paid on a commission basis, they have produced no evidentiary facts supporting that assertion.

Plaintiffs did not understand they were paid on a commission basis nor do their pay stubs reflect that they were paid on a commission basis. Instead, Plaintiffs' pay stubs indicate they were paid an hourly rate of pay. See Exhibit A to First Amended Complaint, Dckt #16. In addition, Defendants' contract with Plaintiffs' union states that Plaintiffs are to be paid either on an hourly or piece rate basis, *not* on a commission basis. Because the parties dispute as to how Plaintiffs were paid and because the manner in which Defendants paid Plaintiffs is crucial to the resolution of the Section 7(i) affirmative defense, Plaintiffs are entitled to information and documents that will establish Defendants' method of compensation.

As further set forth below, Plaintiffs require that Defendants produce the following documents, identified below, which are relevant to determining whether Plaintiffs were paid on a commission basis:

6

1.      **Document Request No. 32 and Document Request No. 33**

Document Request Nos. 32 and 33 request documents setting forth the amounts Defendants charged their customers. Specifically, Plaintiffs requested, and Defendants refused to produce, the following documents:

> **Document Request No. 32: Invoices or other documents, for the three year period prior to Plaintiffs filing their Complaint, showing the amount Defendants' customers were charged, the amounts they paid, and their customers' method of payment.**
>
> **Document Request No. 33: All contracts, agreements and other documents that evidence arrangements Defendants had to perform window washing services for their customers, since November 8, 2004 to the present.**

Defendants objected to producing such information on the basis that the requests were overly broad and unduly burdensome and not calculated to lead to the discovery of admissible evidence. Defendants also objected to the requests because they called for the production of confidential and proprietary information relating to CCS's current customers and because such documents do not relate to the Section 7(i) exemption. See Defendants' First Supplemental Responses to Plaintiffs' First Request for Production of Documents, attached hereto as Exhibit C. Each of those objections is without merit for the reasons explained in the following paragraph.

First, Defendants' relevancy objection is improper. A commission compensation plan pays an individual a percentage of the price charged to the customer; therefore, documents showing how much Defendants' customers were charged, how much they paid, how those amounts were calculated, and evaluating how those amounts relate to the manner in which Plaintiffs were paid is highly relevant to determining whether Plaintiffs were paid on a commission basis *Wilks v. The Pep Boys,* No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537, * 33-34 (M.D. Tenn. September 26, 2006); *Yi v. Sterling Collision Centers, Inc.,* 480 F.3d 505, 508 (7th Cir. 2007) ("The essence of a commission is that it bases compensation on sales, for example a percentage of the sales price"). Defendants also

objected to Document Request Nos. 32 and 33 on the basis that they call for the production of confidential and proprietary information. That objection is improper because it is moot. The Court entered the parties' stipulated protective order on July 21, 2008, which will sufficiently protect Defendants' confidential and proprietary information.

In addition, Defendants generally objected to Document Request Nos. 32 and 33 as overly broad and unduly burdensome. Those objections, too, are improper. Notably, Defendants injected the Section 7(i) affirmative defense into this litigation and cannot avoid their obligations to produce discovery relating to their affirmative defense on the basis that such discovery is overly burdensome. Moreover, Plaintiffs cured Defendants' objections as to scope because Plaintiffs agreed to accept responsive documents for a sample period for each year in the statute of limitations period. Specifically, Plaintiffs agreed to limit the scope of the requests to the months June, July and August in the years 2004, 2005, 2006, and 2007. See Exhibit A. This is more than sufficient to moot Defendants' objections regarding the scope of Plaintiffs' initial requests.

### 2. Document Request Nos. 2 and 6

Document Request No. 2 requested that Defendants produce the time and payroll records Defendants are required to maintain pursuant to the Federal Regulations, 29 C.F.R. 516.2, for Plaintiffs. A related request, Document Request No. 6, requested that Defendants produce documents identifying the hours Plaintiffs worked each day.

Defendants answered this request in part. Specifically, Defendants produced Plaintiffs' payroll records, but failed to produce Plaintiffs' time records, showing the actual time Plaintiffs' worked each day and each week. Plaintiffs understand that Defendants did not maintain a record of the number of hours Plaintiffs worked prior to 2008, and if that is true, Plaintiffs only seek production of their time sheets for the year 2008.

8

Plaintiffs' time sheets are relevant to the Section 7(i) exemption because those time records, along with Plaintiffs' pay records, are relevant to establishing that Plaintiffs were paid at least one and one half times the minimum wage rate for all time they worked. In addition, Defendants' payroll records fail to adequately explain how Plaintiffs were paid for the jobs they completed. Accordingly, the time records are relevant because they will assist Plaintiffs in establishing how Defendants paid them – whether they were paid on an hourly basis, piece rate basis, commission basis, or some other basis.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs request that their Motion to Compel be granted, and that Defendants be compelled to produce the following documents within ten (10) days of the Court's order:

- A.  A reproduction of the data, previously produced to Plaintiffs in an .rtf file, in its native format;

- B.  Plaintiffs' daily time sheets for the period between January 2008 and August 2008.

- C.  For the requested sample period of time, documents identifying Defendants' customers and the amounts they were charged, including invoices or other documents showing the amount Defendants' customers were charged; documents showing the payment and method of payment by such customer for the service performed by Defendants;

- D.  For the requested sample period of time, all contracts, agreements and other documents that evidence arrangements Defendants had to perform window washing services for their customers, since November 8, 2004 to the present.

Respectfully submitted,

Dated: August 28, 2008

s/Douglas M. Werman
Douglas M. Werman (ARDC #6204740)
Maureen A. Bantz (ARDC#6289000)
Werman Law Office, P.C.
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the following **Plaintiffs' Motion to Compel Defendants to Completely Answer Plaintiffs' First Request for Production of Documents** was served via electronic mail on August 28, 2008 on:

Christina Y. Nelson
Ira M. Levin
Martin K. LaPointe
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Ave., 22nd Floor, IBM Plaza
Chicago, IL 60611-3607

s/Douglas M. Werman
Douglas M. Werman