# EXHIBIT C

383528.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMON ALVARADO, JAVIER ALVARADO, RICARDO ALVARADO, JAIME BANUELOS, ARTURO BANUELOS, RUBEN BANUELOS, IGNACIO JAVIAN, JOSE LARIOS, PEDRO CASTRO, ABEL CASTRO, TAURINO GUZMAN, HENRY MARTINEZ, LUCIO POLANCO, SERGIO POLANCO, JUAN POLANCO, FERNANDO CASTRO, HORACIO CASTRO, ERICK RAMIREZ, JOSE VALDEZ, ANTONIO GUZMAN, FRANCISCO GUZMAN, CARLOS BANUELOS, FELIPE BERUMEN, and JOSE GARCIA<br><br>Plaintiffs,<br>v.<br>CORPORATE CLEANING SERVICE, INC., and NEAL ZUCKER, individually,<br><br>Defendants. | No. 07 C 6361<br><br>Judge Robert M. Dow |

### DEFENDANTS' FIRST SUPPLEMENTAL ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants Corporate Cleaning Services, Inc. and Neal Zucker supplement their answers to Plaintiffs' First Set of Interrogatories to Defendants as follows:

### Preliminary Statement

In responding to the Interrogatories, Defendants have conducted a reasonable search and review of the information available to them. To the extent the Interrogatories, or any portion thereof, seek to require Defendants to take any action other than the aforesaid reasonable investigation, Defendants object to the Interrogatories on the grounds that they are unduly burdensome, oppressive and constitute harassment.

Defendants expressly reserve the right to provide further answers based upon records independent of Defendants' records and from information and/or documents which may come to light in the future.

In responding to the Interrogatories, Defendants have not fully completed their investigation of the facts relating to this case, and have not fully completed their discovery in this action, and have not completed preparation for trial. All of the answers contained herein are based only on the information and documents presently available to Defendants and specifically known to Defendants. It is anticipated that further discovery, independent investigation and analysis will supply additional information. Therefore, the

(3) Angie Berg, Operations Manager, Corporate Cleaning Services, Inc., 21 West Elm Street, 2nd Floor, Chicago, IL 60610, has knowledge concerning the hours Plaintiffs worked;

(4) Phillip Kujawa, Foreman, Corporate Cleaning Services, Inc., 21 West Elm Street, 2nd Floor, Chicago, IL 60610, has knowledge concerning the hours worked by Plaintiffs and the compensation system used by CCS and throughout the window washing industry in Chicago;

(5) Eloy Rodriguez, Foreman, Corporate Cleaning Services, Inc., 21 West Elm Street, 2nd Floor, Chicago, IL 60610, has knowledge concerning the hours worked by Plaintiffs and the compensation system used by CCS and throughout the window washing industry in Chicago; and

(6) Plaintiffs have knowledge concerning the allegations in Plaintiffs' Amended Complaint and Plaintiffs' job duties and responsibilities.

## INTERROGATORY NO. 6

Since the filing of this lawsuit, have Defendants changed in any way the method or manner in which they (a) record the number of hours worked by their employees, (b) how they compensate their employees, or (c) how they schedule their employees to work. If your answer is yes, explain:

1. How Defendants changed their method of recording the number of hours worked;
2. How Defendants changed their manner of compensation;
3. How Defendants changed their method of scheduling;
4. Why Defendants changed their method for recording number of hours worked and/or the manner of compensating and/or the method of scheduling their employees.

**ANSWER:** Defendants object to this interrogatory as overly broad, irrelevant and not calculated to lead to the discovery of admissible evidence.

**FIRST SUPPLEMENT:** Defendants object to this interrogatory as overly broad, irrelevant and not calculated to lead to the discovery of admissible evidence to the extent it seeks information concerning the compensation system for employees other than window washers. Subject to the foregoing objections, Defendants state:

1. Prior to the filing of the lawsuit, CCS recorded the number of hours assigned to each job and the portion of those "assigned hours" allocated to each window washer. An "assigned hour" is not an actual clock hour and does not correspond to the time actually worked. Starting with the December 4, 2007 pay period, CCS began recording the number of hours actually worked by each window washer. Each window washer is now required to fill out a daily time sheet with the following information: building address, ticket number, time in/time out, date work completed, number of drops, etc, and signature.

2. Prior to December 4, 2007, all window washers were compensated based upon the "assigned hours" charged to a client and allocated to the window washer. As stated above, an "assigned hour" is not an actual clock hour and does not correspond to the time actually worked. This compensation system is described more fully below.

Since the December 4, 2007 pay period, window washers have been compensated on either (a) an hourly basis; or (b) based upon the "points" charged to a client. All Plaintiffs (whether paid hourly or based upon "assigned hours" or "points") have been classified as "A Card" during the time period relevant to the Amended Complaint. Pursuant to negotiations with the window washers' union, "A Card" window washers compensated on an <u>hourly basis</u> received $16.60 per hour from December 4, 2007 until December 31, 2007 and $17.25 per hour as of January 1, 2008 for the first forty hours

worked in a workweek, and time and one half for all hours worked in excess of forty in a workweek.

Under the "points" and "assigned hour" systems, "points" are essentially the same as "assigned hours"; the only difference being a change in terminology to avoid confusion and to clarify that "assigned hours" are not—and have never been—actual hours worked. Window washers compensated under these plans get so much per "point" for the work they perform. A window washer compensated under these plans may work only 5, 6, or 7 hours a day and still receive credit for 8, 9, or 10 "points" depending upon how much work he has done. Each job is assigned a certain number of "points" for which the customer is charged, regardless of the actual time it takes to perform the job. The number of "points" assigned to a job depends upon the complexity of the job and how much work the Company estimates is involved. Those "points" are then multiplied by a cost rate to calculate the amount charged to the customer. The number of "points" charged to a customer equals the number of "points" allocated to the window washers. For example, if a customer is charged 40 hours for a job, all 40 hours are allocated to the window washer(s) who complete that job.

Each window washer's allocated share of "points" (or "assigned hours") is then multiplied by his union rate to compute his pay. From November 8, 2004 to January 1, 2007, the union rate for "A Card" window washers was $16.00 per "assigned hour". From January 1, 2007 until December 31, 2007 it was $16.60 per "point" (or "assigned hour"). Since January 1, 2008, it has been $17.25 per "point." Thus, if an A Card window washer is allocated 50 "points" for a week's work in 2008, his pay for that week would be 50 times his union rate (e.g., 50 x $17.25 or $862.50). Accordingly, his pay is

directly related to the amount charged the client and not the amount of hours he actually worked.

3. Since the lawsuit was filed, CCS has not changed its method of scheduling window washers. Window washers are assigned to jobs based upon several factors including: experience, skill level, availability, efficiency, scheduling preferences and need for oversight. The Company also takes into consideration the priority levels of jobs, the number of jobs pending, acquainting window washers with new buildings, and weather conditions. Answering further, Defendants state that because hourly window washers have less incentive to work efficiently and require more oversight, CCS attempts to assign window washers who are paid on an hourly basis to jobs that have more supervision. For those window washers paid hourly, CCS also takes overtime into consideration.

4. Defendants object to this interrogatory to the extent it seeks information protected by attorney work product and/or the attorney-client privilege. Subject to the foregoing objections, Defendants changed their method for recording the number of hours actually worked and the manner of compensating window washers in response to the lawsuit and in connection with consulting with legal counsel. Defendants have not changed their method for scheduling window washers except as noted above.

## INTERROGATORY NO. 7

Describe all of the computer files, databases or systems (including non-electronic) which Defendants maintain or have maintained since January 2004 which are used to track or maintain information relating to the amount of wages paid to employees and/or the amount of hours worked by employees on a daily and weekly basis, by providing the following information: