# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edmond E. Chang | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 6361 | **DATE** | 5/27/2011 |
| **CASE TITLE** | Ramon Alvarado vs. Corporate Cleaning Service, Inc., et al | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Plaintiffs' motion in limine [134] and to quash [131] are granted (without sanctions), and CCS's motion to complete third-party discovery [182] is denied.

■[ For further details see text below.] Docketing to mail notices.

**STATEMENT**

Before the Court are motions presenting the issue of the relevance of industry compensation customs and practices that CCS proposes to use at trial. Plaintiffs filed a motion in limine to exclude any evidence of industry custom, R. 134, and, relatedly, Plaintiffs filed a motion to quash a subpoena served on a third-party for payroll records to use as evidence of industry custom, R. 131. Furthermore, Plaintiffs seek sanctions against CCS for issuing the subpoena. *Id*. CCS filed a motion to complete the requested third-party discovery. R. 184. On May 25, 2011, the Court granted Plaintiffs' motion in limine and denied CCS's motion to complete third-party discovery for the reasons contained here. Correspondingly, the motion to quash is granted, although without sanctions against CCS.

To prove that CCS pays Plaintiffs their compensation in the form of commissions, CCS seeks to admit evidence of industry compensation customs. R. 134. CCS proposes to introduce evidence from several sources: another company in the window-washing industry, Service One Incorporated; Service One's president, Tom Trinen; and, the company that handles Service One's payroll, ADP Incorporated. *Id,* Exh. A. Furthermore, CCS has identified three of its foremen with knowledge of the compensation systems for window washers to testify about compensation practices. R. 134 at 2-3.

| Courtroom Deputy Initials: | PAMF |
|---|---|

**STATEMENT**

Plaintiffs allege, and CCS does not dispute, that CCS never identified any expert witnesses. R.134 at 5; R. 140. Federal Rule of Evidence 702 permits testimony based on "scientific, technical, or other specialized knowledge" by an expert witness. But a party seeking to use an expert witness must disclose the expert to opposing counsel. Indeed, Federal Rule of Civil Procedure 26(a)(2)(A) speaks in mandatory terms and requires that a "party must disclose" any expert witness. Rule 37(c)(1) establishes the penalty for failure to disclose: "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."

CCS does not dispute that it never identified any expert witnesses. R. 140. Moreover, CCS does not argue that its failure to disclose was substantially justified or harmless. R. 140. Instead, CCS argues that the evidence of the window washers and compensation by other companies is lay testimony. R. 140, 10-12.

Plaintiffs disagree and argue that the testimony is based upon specialized knowledge. R. 134 at 4 (citing *Sachs v. Reed Aquaria Design, Inc.,* 2007 WL 3223336 (N.D. Ill. 2007)). The Court agrees. The testimony of the foremen and of executives from other companies that the industry pays by the job, not by the hour, would be based on their specialized knowledge of the industry. CCS argues that the foremen "are capable of possessing information concerning the compensation scheme used by the window washing companies for whom they worked." R. 140, 12. But that evidence is comparable to the expert testimony in *Sachs.* Just as the witness in *Sachs* based his testimony on his experience (there, in the field of building aquaria), among other things, the windows washers' testimony is based on their experience working with window washers and other companies. The same holds true for Service One and its officers; their testimony would stem from their specialized experience in the industry. The testimony is expert testimony.

CCS also argues that this type of testimony is explicitly labeled as lay testimony in the advisory committee notes accompanying Federal Rule of Evidence 701. This argument also misses the point. The notes to Rule 701 state that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business" without being an expert. Fed. R. Evid. 701 (2000 amendment committee notes) (citing *Lightning Lube v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)). That situation is dissimilar to the present case because there a business owner or officer is testifying solely about his or her *own* respective business for purposes of a damages calculation, as evidenced by the citation to *Lightning Lube.* 4 F.3d at 1176 (permitting lay testimony of witness familiar with day-to-day affairs of the business to calculate lost profits damages). The proffered testimony in this case is not being used to calculate a company's own damages, nor is the testimony coming from a CCS employee to describe only CCS. On the contrary, CCS seeks to use this testimony to ascribe an attribute to the entire industry.

Instead of supporting CCS's position, the notes to Rule 701 counsel against labeling this as lay testimony. The notes recognize "the risk" that Rule 702 [could be] evaded by "proffering an expert in lay witness clothing." And the advisory committee notes presciently identify the very issue here, as they note that one of the reasons to be careful in distinguishing expert versus lay testimony is to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 . . . ." Because CCS has not disclosed any expert witnesses, Rule 37 prohibits the use of this testimony.

**STATEMENT**

Additionally, even if CCS had disclosed expert witnesses, the challenged testimony would still be irrelevant, and irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence is "relevant"if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. Although CCS concedes that "an industry's own characterization of the type of compensation paid to employees is *not relevant* for purposes of the FLSA exemptions," R. 140 at 8 (emphasis added), CSS argues that *Yi v. Sterling Collision Centers*, 480 F.3d 505, 510 (7th Cir. 2007), found industry compensation customs to be relevant. *Id.* CCS misunderstands *Yi's* reference to industry custom.

*Yi* merely noted in the opinion's closing paragraph that a plausible reason for a compensation plan that is "industry-wide, and of long standing," but unchallenged by the Department of Labor, is that the compensation plan falls within an FLSA exemption. 480 F.3d at 510. But CCS takes *Yi* too far in light of the context. *Yi*'s recognition that the auto-repair industry has a long-standing, unchallenged system of compensation comes at the very end of its holding, after *Yi* engages in an extensive analysis of the actual nature and operation of the compensation system, without reference to industry practice itself being relevant to the analysis. (In fact, the word "industry" is only used once outside of the concluding paragraph, to simply note that this compensation system is common in the auto-repair industry.) The only point that *Yi*'s final paragraph made was that the industry-wide practice there had not alerted the watchdog (the Labor Department), probably because the practice comprises a commission system. *Yi* was not holding that because the compensation practice was industry-wide, then the compensation was commission-based.

CCS argues that *Wajcman v. Inv. Corp. of Palm Beach*, 2009 WL 465071 (S.D. Fla. 2009), supports the industry-practice argument. *Wajcman* is distinguishable for two reasons. First, *Wajcman* held that the language of the statutory provision at issue there, which differs from the provision here, suggested that industry custom is an important consideration. *Id.* at *4. CCS has not argued that the language of 29 U.S.C. § 207(I) directs the Court to look at industry custom. Second, *Wajcman* noted that the *patron's* perspective is relevant. 2009 WL 465071, at *4 (also placing an emphasis on the word "patron"). Here, the proposed testimony is not from the patron's perspective, but is instead from the company perspective–be it employee or officer.

Because the evidence of industry custom is inadmissible for any purpose, Plaintiffs' motion in limine is granted and CCS's motion to complete third-party discovery is denied. Additionally, because the evidence sought by the ADT subpoena is evidence to establish the industry's compensation customs, the motion to quash is denied.

In addition to asking the Court to quash the ADT subpoena, Plaintiffs also ask for sanctions against CCS. CCS's response to the motion to quash indicates that CCS took reasonable steps to limit any burden on subpoenaed non-parties. R. 140 at 2-4. Although Plaintiffs and the third-parties disagree with the manner in which CCS pursued its subpoenas, Plaintiffs do not dispute CCS's representations in its response.

**STATEMENT**

R. 140 at 2-4. Specifically, CCS made efforts to engage in a dialogue regarding limitations and withdrawing the ADT subpoena. Although CCS and Plaintiffs go back and forth on who is to blame for a lack of communication, their arguments are a wash. There are sufficient, undisputed representations by CCS to establish that it took reasonable steps to avoid unduly burdening ADT, Service One, and Trinen. Plaintiffs' request for sanctions is denied.

For the reasons stated, Plaintiffs' motion in limine [134] and to quash [131] are granted (without sanctions), and CCS's motion to complete third-party discovery [182] is denied.